NELL R. MAHANEY, Appellant, v. KANSAS CITY, CLAY COUNTY & ST. JOSEPH AUTO TRANSIT COMPANY.—46 S. W. (2d) 817.

Division Two, February 17, 1932.

*James Taylor, J. V. Jones* and *Madden, Freeman & Madden* for appellant.

*Harris & Koontz* for respondent.

WESTHUES, C.—Plaintiff, a resident of Clay County, Missouri, sued defendant, a common carrier, to recover damages in the sum of thirty thousand dollars, for personal injuries alleged to have been sustained as the result of a fall, while attempting to descend from defendant's bus. On a trial the jury returned a verdict for defendant. Plaintiff, being unsuccessful in her motion for a new trial, duly perfected an appeal to this court.

The acts of negligence charged against defendant in plaintiff's petition are substantially as follows: Plaintiff, a passenger, was permitted, by the driver of the bus, to enter a small compartment in the rear part of the bus. The distance, from the ground to the floor of the compartment, is alleged to have been about three and one-half feet. The petition charges that the compartment was not equipped with handholds to aid passengers in entering or descending from the bus; that a small step was provided as the only means of assistance for passengers entering or leaving the compartment; that this step was directly below an iron bumper which materially interferred with and prevented persons leaving the compartment from getting a firm foothold on the step; that the step was bent downward so that it sloped toward the outside and was smooth and slippery; that plaintiff was permitted and required to step from the bus without assistance and being unable to get a firm foothold slipped and fell, causing her injury, as set out in the petition. The principle injury complained

of in the petition and in plaintiff's testimony is that she suffered a severe sprain of the sacroiliac joint.

Defendant's answer consisted of a general denial, and a plea of contributory negligence setting forth four specific acts, alleged to have been committed by plaintiff, which contributed to her injury, if any she received.

The evidence, on the part of plaintiff, supports a finding that plaintiff on December 25, 1925, at Liberty, Missouri, entered a bus, belonging to defendant, as a passenger destined for Glenaire, Missouri. The main part of the bus, provided for passengers, had been filled prior to the time plaintiff arrived. The driver of the bus directed the plaintiff and a number of others to enter a small compartment in the rear part of the bus ordinarily used for the carrying of baggage. It was also equipped with four or five seats and was used by passengers, especially when the main part of the bus was filled. When the bus arrived at Glenaire it was stopped by the driver for the purpose of discharging and taking on passengers. Four of the passengers in the small compartment, where plaintiff was riding, decided to leave the bus at this point. The door was opened by one of the passengers. Two ladies descended from the bus prior to plaintiff, but in place of using the step they jumped from the floor to the ground. Plaintiff attempted to use the step and while in the act of getting off the bus fell and was injured. Plaintiff and a number of witnesses testified that the step was at least partially hidden by the rear bumper. Other witnesses testified that the step was bent downward so that it sloped to the outside. Plaintiff testified that as she stepped on the step her foot slipped, causing her to fall. Defendant offered testimony tending to prove that the type of bus in use on this trip did not have a bumper extending across any part of the step; that the bus was a new one, in good condition and that no defect existed in the step.

Plaintiff in her motion for a new trial and in her brief complains that the trial court unduly limited the cross-examination of defendant's witnesses, and also that the trial court improperly commented on the evidence to plaintiff's prejudice. The first occurrence of this, that requires our consideration, is when defendant's witness, Wilford, was being cross-examined by plaintiff's counsel. Plaintiff's witnesses had testified that the bus in question had attached to it a bumper that extended at least half way across the step leading to the rear compartment. Defendant's witness, Miche, the driver of the bus, had also testified that the bumper extended partially across the step. Wilford was the first witness to testify that the type of bus driven by Miche on that day did not have a bumper extended across the step. Wilford was not a witness to the accident. His testimony, as to the type of bus, was

based on the fact that the evidence disclosed the number of the bus used by Miche on the day of the accident. Plaintiff's counsel then attempted to elicit from Wilford the fact that the defendant company did have a type of bus on which the bumper extended, as plaintiff's witnesses and Miche had described. At this point the following occurred:

"Q. Well, the bumper itself, the pipe was in the form of a pipe—round? A. Yes, sir.

"Q. That was how far above the step over this particular type car where it comes clear across? A. Just a little above the step and about an inch—the flat side of it just a little above the step. The step sets up here and the door opening here (indicating).

"THE COURT: You are not talking about this car?

"MR. MADDEN: The type of car where this thing comes clear across.

"THE COURT: You are bound by the car in this accident.

"To which ruling of the court the plaintiff at the time duly excepted and still excepts.

"MR. MADDEN: Bound by? We are not bound by this. This is a diagram and shows that that type of car where this accident happened; the bumper ran clear across.

"THE COURT: You are mistaken. Some witnesses say it went part way and some say it went the whole way, but the testimony about the other type of cars is simply confusing. Objection sustained. To which ruling of the court the plaintiff at the time excepted and still excepts.

"MR. MADDEN: We object to the remarks of the court, if Your Honor please—

"THE COURT (interrupting): You are asking this witness what other types of cars (*they*) had. That is improper. To which ruling of the court the plaintiff at the time excepted and still excepts.

"MR. MADDEN: This witness don't know what type of car it was this happened on. He don't know anything about this accident.

"THE COURT: You are asking him to state about number '20' cars.

"MR. MADDEN: As I understand you, you didn't know anything about this accident? A. No, sir.

"Q. Didn't know anything about the type of cars it occurred on? A. No, sir; I don't know anything about the type of car or nothing."

Miche, the driver of the bus, testified that the bus in question was a (Y.) 20 type pony bus coach number 22. Miche also testified as follows:

"Q. And that is the way when people step down out of this compartment, that bumper is in the way of their stepping down the step, isn't it? A. Well, it is possibly right in the middle of the door.

"Q. Now, in stepping off, the first thing is to swing the door out and the passenger steps down and he has to step over that bumper, don't they, to get their foot on the step below? A. Yes, sir."

The cross-examination, as attempted to be made by plaintiff's counsel, should have been permitted. It will be noted that defendant's counsel made no objection and evidently deemed the cross-examination proper. There was positive and direct evidence, by plaintiff's witnesses, and Miche, a witness for defendant, that the bus, on which plaintiff was a passenger, at the time she received her alleged injuries, was the type of bus which has a bumper extended across the step of the rear compartment. Wilford might have been honestly mistaken when he testified that the type of bus in question was not equipped with a bumper as the other witnesses testified. His testimony was in direct conflict with the testimony of other witnesses. Therefore, plaintiff's counsel should have been permitted by cross-examination to show that the defendant company had a type of bus such as described by the witnesses present at the time plaintiff is alleged to have received her injuries. What type of bus was in use, at the time of the accident, was a question for the jury to decide. The comment of the court might also have lead the jury to believe that plaintiff was bound by the testimony of witness Wilford. Since defendant was represented by able counsel, it was wholly unnecessary for the court to interpose objections, and the comment on the evidence was improper. A court should always in the trial of cases maintain an impartial attitude. [Landers v. Quincy O. & K. C. Railroad Co., 114 S. W. l. c. 545, 134 Mo. App. 801; Vaughn v. May, 9 S. W. (2d) 156; Schmidt v. St. Louis Railroad Co., 50 S. W. 921, 149 Mo. 269; 38 Cyc. 1320 (4).] As to the right to cross-examine see Gurley v. St. Louis Transit Co., 259 S. W. l. c. 898.

Plaintiff also assigns as error the action of the trial court in excluding the evidence of Dr. Ayres as to prior inconsistent statements of defendant's witnesses Drs. Skinner and Kuhn. There was a sharp conflict in the testimony as to whether plaintiff had suffered an injury to her sacroiliac joint. Dr. Skinner had testified on direct examination that the X-ray picture referred to, disclosed no such injury. Dr. Ayres, plaintiff's physician, had testified that plaintiff did suffer such an injury. While Dr. Skinner was being cross-examined he was asked:

"Q. In this case does the picture reveal separation? A. I don't think it does.

"Q. Did you talk to Dr. Ayres about this at one time? A. Well, I have no recollection of it, but he tells me I did and I believe Dr. Ayres.

"Q. Would you believe him if he stated you told him that the joints were off or separate? A. I would want to hear whether we

had been discussing the same case, because my report says this case is down in writing, made at the time of the examination; but that would be a rather unfair question." . . .

"Q. Well, let's see about your interview with Dr. Ayres. Did you, or did you not, tell Dr. Ayres over the telephone, discussing this case, that the sacroiliac joint was off? A. Well, I don't think I would care to say that, because I don't believe—my examination was made and my report was made out, but if Dr. Ayres said that I said that, I said it was, but if I did say it I was probably mistaken in the case, because there is no mistake about what I think of this case; but I believe Dr. Ayres."

Dr. Ayres was called as a witness in rebuttal, by plaintiff, and the following occurred:

"Q. Did Dr. Skinner say to you in that conversation, in regard to the Mahaney case, that he found that the examination revealed the sacroiliac joint was off or separated, or words to that effect?

"MR. CALDWELL: We object to that for the same reasons as stated in the last objection.

"THE COURT: Sustained. You are attempting to impeach the testimony of the witness?

"To which action and ruling of the court the plaintiff at the time excepted and still excepts.

"MR. MADDEN: Certainly I am.

"THE COURT: The testimony of Dr. Skinner was, he remembered no such statement and that he didn't think he made it. Objection sustained.

"To which action and ruling of the court the plaintiff at the time duly excepted and still excepts.

"MR. MADDEN: To which we except.

"Q. Doctor, were you talking to Dr. Skinner about any other case when you talked to him in that conversation?

"MR. CALDWELL: We object to that as immaterial and not the proper rebuttal and not proper impeachment, if offered for that purpose.

"THE COURT: Objection sustained.

"To which action and ruling of the court the plaintiff at that time duly excepted and still excepts.

"MR. MADDEN: To which we except. I offer to prove by this witness that this conversation—I offer to show by the witness that the witness, Dr. Ayres, was talking to Dr. Skinner at the time of the examination and that he was talking about the Mahaney case and no other case. I offer to show by the doctor that Dr. Skinner stated to him that from an examination of Miss Mahaney it revealed that the joint was off—sacroiliac joint was off.

"MR. CALDWELL: Now, that is objected to for the reason it is not proper impeachment, not proper rebuttal and immaterial, Dr. Skin-

ner having stated that he didn't remember having such a conversation with Dr. Ayres and, if he did have such a conversation, he was mistaken about the case—about the picture he was inquiring about, and therefore, it is not an impeachment matter and, if Dr. Ayres—

"THE COURT (interrupting): It is not a question here whether the sacroiliac joint was affected. The question is, here, whether Dr. Skinner told a falsehood upon the stand; that is the question. It is not a question whether Dr. Skinner may have been mistaken in his recollection. That is not the question. The question is whether he told a falsehood upon the stand; if it is offered for that purpose, it is competent for that purpose and no other. The question was asked Dr. Skinner whether he made the statement. As the question was asked whether or not Dr. Ayres came to see him and see the plates and asked the question of Dr. Skinner and Dr. Skinner said he didn't talk to him except over the telephone at that time and that he could not have told him that the sacroiliac joint was out of place, abnormal or distended or injured as shown by the plates, the court holds that the proper foundation for impeachment was not laid and the court so rules.

"To which ruling of the court the plaintiff at the time duly excepted and still excepts."

It will be noted that Dr. Skinner was asked if he stated to Dr. Ayres, over the telephone, in discussing the Mahaney case, that the sacroiliac joint was off or separated. This, Dr. Skinner indirectly denied by saying that he had no recollection of such a conversation, and he also insinuated that if he made this statement he may have been discussing some other case, but that if Dr. Ayres stated that he, Skinner, made such a statement he would believe Dr. Ayres. Under these circumstances, plaintiff should have been permitted to introduce the evidence offered of Dr. Ayres to the effect that Dr. Skinner did make such a statement with reference to the Mahaney case. The trial judge was in error when he stated, "The question is, whether Dr. Skinner told a falsehood upon the stand." The law recognizes the frailty of the human memory in that a witness may be honestly mistaken about a matter or may not remember having made certain statements inconsistent with his testimony. When this condition presents itself in the trial of a case the opposing party has the right to offer testimony tending to prove that the witness did make such contradictory statements. The applicable rule is well stated in Jones On Evidence, Civil Cases, (3 Ed.) page 1337, sec. 849, and is supported by numerous authorities there cited. See also 40 Cyc. 2737 (c) and cases there cited.

Appellant contends that certain instructions given by the court, on behalf of the defendant, are erroneous. Given instructions numbered four and ten read as follows:

"4. The court instructs the jury that plaintiff does not charge that the step in question was excessively high from the ground or excessively far from the floor of the bus, and therefore in determining who shall have your verdict in this case you will disregard all evidence as to the distance from the floor of the bus to the step and the distance from the step to the pavement.

"10. The court instructs the jury that, regardless of all other considerations in the case, if you find that plaintiff's injury was caused by her own negligence in failing to put her foot firmly upon the step of the bus as she was stepping therefrom, if you so find, or in failing to observe and consider the distance from the floor of the bus to the step and from the step to the pavement, thereby causing her to lose her equilibrium and fall, if you so find, or in attempting to get out of the bus in a hurried manner, if you so find, or that any one or more of said acts, if you so find, directly contributed to cause the plaintiff to fall, then plaintiff cannot recover, and your verdict must be for the defendant."

It would be a difficult task to write instructions more inconsistent with each other than the instructions above quoted. Instruction number four told the jury to disregard the evidence as to the distance from the floor of the bus to the step and from the step to the pavement. Instruction number ten advised the jury that if plaintiff failed to consider the distance from the floor to the step and thence to the pavement she would be guilty of contributory negligence. How could the jury determine the latter question when they were told to banish from their minds all evidence with reference to the distance in question? The distance from the floor of the bus to the pavement was a circumstance in the case that the jury ought to have considered in determining the necessity of handholds; the necessity and location of the step; the question of whether plaintiff should have been assisted from the bus by defendant's driver and also for the determination of other questions in the case. The distance from the floor of the bus to the ground as pleaded in plaintiff's petition was three and one-half feet. Instruction number four is, therefore, erroneous. Instruction number ten is erroneous in that it assumed plaintiff to have been negligent. The question of plaintiff's contributory negligence should have been submitted to the jury, and in order to bar plaintiff's recovery, on this ground, the jury should have found: First, that plaintiff was guilty of the act of commission or omission attributed to her; second, that such conduct of plaintiff, was negligence on her part; third, that this negligence of plaintiff, if any, directly contributed to plaintiff's injury. These questions of fact must not be assumed in the instructions but must be submitted to the jury. Instruction number ten violates this rule of law.

804

In instruction number seven the court told the jury that if the bumper, referred to in evidence, did not *interfere with and prevent* plaintiff from getting a firm foothold on the step, then plaintiff could not recover on the ground that the step was not convenient or accessible by reason of the bumper. This instruction is too restrictive. If the bumper in any way interfered with plaintiff's free access to, or use of the step and by reason thereof rendered the exit from the bus unsafe and plaintiff was injured as a result thereof, defendant would be liable.

Instruction number nine reads in part as follows:

"You are further instructed that if you find and believe from the evidence that plaintiff alighted from the bus before the driver had reasonable opportunity to go to the rear of the bus and offer his assistance to her in alighting, then plaintiff cannot recover on account of any failure of the driver in that respect. (Given.)"

We do not find any testimony to support this part of the instruction. According to the evidence the driver of the bus made no effort whatever to aid any of the passengers departing from the bus. At the time of the accident the driver was still in his seat at the steering wheel. He made no effort to step from the bus until after he was informed of the accident. If the plaintiff had waited for the driver to assist her from the bus she would probably have found herself riding to the next station. Whether or not it was the driver's duty, under the circumstances, to render such aid is a question of fact for the jury, under proper instructions, keeping in mind the degree of care required of a common carrier of passengers.

Respondent urges that the demurrer, offered at the close of the evidence, should have been sustained, contending that the evidence reveals plaintiff to have been guilty of contributory negligence as a matter of law. Therefore, the judgment of the circuit court should be affirmed even though the trial court committed error in the admission of testimony and in its instructions. [Traner v. Mining Co., 243 Mo. l. c. 371, 148 S. W. l. c. 72 (1).] Viewing the evidence in its most favorable light to appellant, which we must do on the demurrer, appellant made a submissible case for the jury. Therefore, the rule relied on by respondent does not apply in this case. [Barr v. Mo. Pac. R. R. Co., 37 S. W. (2d) l. c. 929 (2-5).]

For the errors indicated the judgment of the circuit court is reversed and the cause remanded for a new trial. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All of the judges concur.