261 S.W.2d 69 (1953)
STATE
v.
ROHMAN.
No. 43829.
Supreme Court of Missouri, Division No. 1.
October 12, 1953.
*70 Mark M. Hennelly, St. Louis, for appellant.
John M. Dalton, Atty. Gen., Aubrey R. Hammett, Jr., Asst. Atty. Gen., for respondent.
CONKLING, Judge.
A jury having found him guilty of grand larceny and that formerly he had been convicted *71 of a felony, and having assessed his punishment at five years in the penitentiary, the defendant William Phillip Rohman appealed from the ensuing sentence and judgment in accordance with the jury's verdict.
Defendant filed his Bill of Exceptions in this Court but has filed no brief. Accordingly, we hereinafter rule the assignments of defendant's motion for new trial which comply with the provisions of Section 547.030 of the Missouri Statutes, and with our Rule 27.20.
The facts relating to the offense are many and involved. Stated briefly, the jury could have found from the evidence that in June, July and August of 1951, defendant was in the employment of the Biederman Furniture Company [hereinafter called Biederman] as a checker and loader at that company's warehouse in the City of St. Louis, Missouri; that his duty was to there prepare merchandise for delivery, take it or cause it to be delivered to trucks at the loading dock, so that Biederman's truck drivers could load and deliver it to Biederman's customers; that one Theopholus Hahn was then in the employment of Biederman as a truck driver; that Hahn's duty was to load the merchandise from the dock and deliver it as consigned by Biederman to Biederman's customers; that Biederman kept a perpetual running inventory of its warehoused stock and with that system "we can tell when a piece [of merchandise] is missing"; that Biederman's "code books" contained and its merchandise bore the manufacturer's and distributor's numbers on all articles manufactured by various concerns and sold by Biederman; and that among the many other items of merchandise warehoused and sold by Biederman were living room suites, valued at $160; mahogany twin beds, valued at $20; bed springs and mattresses; Admiral television sets, valued at $300, and Magic Chef gas ranges, valued at $98 to $105.
The jury could further have found from the evidence that one of the Admiral television sets, numbered 37-K-13, disappeared from the Biederman warehouse after August 7, 1951, and that on August 15, 1951, one O'Shea, who resided in St. Louis, purchased an Admiral television set from Hahn at O'Shea's home and paid Hahn $200 in cash therefor; that the police later came to O'Shea's home and took the set to the police station; that the set was exactly like the set identified at the trial as State's Exhibit 2, and was numbered 37-K-13; that a Magic Chef gas range disappeared from the Biederman warehouse; that in the latter part of July, 1951, one Gennaro, residing in St. Louis, by prearrangement, purchased from Hahn at Gennaro's home a Magic Chef gas range, and paid Hahn $100 therefor; that the police later came and took the gas range to the station; that the range was identified as Exhibit 4 at the trial, and as having come from the Biederman warehouse, and was identified by its serial numbers; and was tagged and "marked with Mr. Gennaro's name on it" when it was taken by police from the Gennaro home; and that the value of the gas range was $98 to $105.
That in June or July, 1951, defendant secured the permission of one Cusumano, a resident of St. Louis, to store some furniture which defendant claimed to own in Cusumano's garage; that the above furniture, later identified as missing from Biederman's warehouse, was placed in Cusumano's garage and later was moved into the latter's home; that that furniture consisted of two twin beds complete with mattresses and springs, and one complete living room suite valued at $160; that defendant later borrowed $170 from Cusumano, informing the latter that if he [defendant] did not repay the money that Cusumano had his [defendant's] furniture as security; that the police came later to Cusumano's home and took that furniture; that when defendant was asked where he got that furniture, he answered "I got it from Biederman Furniture"; that later at the police station defendant stated "that he and Hahn had gotten this furniture from the Biederman Warehouse by means of him [defendant] using what he called the pull ticket to remove the furniture from the warehouse, and placed it on the [loading *72 dock] platform, in a position for Hahn to load it on his [Hahn's] truck, the truck that he [Hahn] was operating, and that Hahn did load the furniture and deliver it and that he met Hahn somewhere in the vicinity of Cusumano's place, and they completed the delivery and stored the furniture in Cusumano's garage."
That defendant also stated "that Hahn had made the transaction and told him [defendant] that he [Hahn] could sell the TV set, and that he [defendant] had removed the set from the [Biederman] warehouse in the same manner he had the furniture for Cusumano, and that Hahn handled the deal after that, and gave him [defendant] a hundred dollars for his part"; and that defendant also stated "that Hahn made the deal or transaction to sell the Magic Chef gas range for a hundred dollars, and that he [defendant] had removed the gas range from the [Biederman] warehouse with the pull ticket that he had especially filled out, and placed it on the platform for Hahn to load, and Hahn did deliver the stuff and later gave him [defendant] fifty dollars"; that defendant also stated, "I would go into the office and have one of those pull tags made, go upstairs and get the merchandise down and put it on the loading platform"; and that defendant also stated he made out "pull tickets" for the above various items of merchandise and gave them to the floorman, then delivered the merchandise to Hahn on the loading dock; and that such pull tickets authorized the floorman to deliver the merchandise to defendant on the loading platform.
The jury could also have found that the Biederman Company, during the period in question, had made no sales whatever to defendant, or Hahn, or O'Shea, or Gennaro, or Cusumano.
Defendant testified, made certain denials and purported explanations, and admitted certain former convictions and incarcerations. The jury was at liberty to believe or disbelieve defendant's purported explanations. But the question of defendant's guilt of the offense charged under the above facts was clearly one for the jury.
Defendant's assignments in his motion for new trial that the verdict and judgment are against the weight of the evidence, or the greater weight of the evidence, or the substantial evidence, or are the result of bias and prejudice, or that the court erred in admitting evidence, preserve nothing for our review. Section 547.030 RSMo 1949, V.A.M.S., Supreme Court Rule 27.20.
Defendant also assigned that the court erred in permitting the State's attorney in opening statement to refer to a conspiracy between defendant and Hahn. In response to the objection the court stated there was "no crime called conspiracy; it is just a way of describing a situation * * * that is the way he has of describing the matter." The State's attorney then proceeded to describe the above concerted actions between defendant and Hahn, and stated to the jury how Hahn and defendant worked together and divided the money from the sale of the furniture taken from Biederman's warehouse. This record is replete with the testimony of many witnesses ample and sufficient in law to establish the taking. Under the instant facts the use of the word "conspiracy" by the State's attorney could not possibly have constituted prejudicial error, and only prejudicial error is reversible. The assignment is without merit.
During the course of the State's opening statement, its counsel stated to the jury that Hahn "was separately indicted." No sufficient objection was made, and after considerable colloquy between court and defendant's counsel the objection was overruled. There is no substance or merit in this assignment.
Defendant assigns that the court erred in permitting State's counsel in the opening statement to refer to statements made by Hahn. Examination of the record shows only one instance in the opening statement where the attorney referred to a statement made by Hahn; that statement was said by counsel to be in the presence of defendant and concerned the above deliveries; *73 and the circuit attorney stated that defendant thereupon adopted what Hahn had said and affirmatively agreed that that was the way the deliveries were made. Assignments of error predicated upon matters concerning which accused made no objection are not open to review. State v. Marshall, 354 Mo. 312, 189 S.W.2d 301. And, in any event, the statement was related to have been made in defendant's presence and that defendant affirmed what Hahn had said. And the evidence in the case when later introduced showed just exactly what counsel had stated. The assignment is overruled.
Defendant assigns as error that the court erred in admitting in evidence State's Exhibits 1 to 10, each inclusive. Exhibit 1 was the "code book" of the Biederman Company. It contained the "code numbers" [Manufacturer's number and Biederman's number] of the different articles of merchandise in Biederman's Warehouse. It was thus the master document by which all of Biederman's merchandise could be identified. Defendant objected to its introduction contending it was hearsay and that no foundation had been laid for its use. Only the pertinent parts of the document were offered and received. The testimony of various employees of Biederman amply identified the book, its preparation, use in the business, and explained its utility and significance. It was kept and used in the regular course of Biederman's business. Books of a business so prepared, kept, used and, as here, properly identified and explained are admissible for the purpose for which the Exhibit was offered. The objection was properly overruled. Exhibit 3 was not received in evidence. Exhibit 2 was the Admiral Television set and Exhibit 4 was the Magic Chef Gas Range. When offered in evidence defendant objected that those two exhibits were not properly identified and that no proper foundation had been laid for their receipt in evidence. Careful reading of the record shows the exhibits were properly identified, accounted for and traced throughout. The assignment is without merit.
Exhibits 5, 6, 7, 8, 9 and 10 were properly admitted in evidence. Those exhibits were original bookkeeping records of warehoused stock of the Biederman Company on the various above mentioned items of merchandise showing the date received, the number received, where received, whether sold, the amount of the separate articles remaining unsold and had thereon spaces for the customer's name, if and when sold. All were records kept in the usual and regular course of business and all were properly identified, explained, and were material. There can be no possible question of their admissibility. The testimony of the witness, Virginia Link, the employee who kept and had supervision of Biederman's stock records, was quite detailed and need not be here set out. But it was sufficient to identify the record exhibits in question definitely and with care and to make clear to the jury and the court their significance and materiality. It was not error to admit the exhibits and the assignments of error are overruled.
Defendant assigned error in permitting certain witnesses to testify as to statements made by Hahn. We note that the record shows in each instance that what was testified to have been said by Hahn was stated by Hahn in the presence of defendant; and that defendant in each instance gave affirmative assent to what Hahn had said. The objection made in each instance was that the testimony was hearsay and that the corpus delicti had not then been established by the State's proof. But it is held not to be essential that all the independent proof of the corpus delicti come first in order of proof. State v. Arndt, Mo.Sup., 143 S.W. 2d 286. Under the above appearing circumstances the objections made for defendant were without merit. See Volume II, Wharton's Criminal Evidence, Section 717, page 1207; State v. Strait, Mo.Sup., 279 S.W. 109, 114; State v. Priesmeyer, 327 Mo. 335, 37 S.W.2d 425, 427; 22 C.J.S., Criminal Law, § 754, page 1288 et seq.
The witness Cusumano testified that he had been convicted of "liquor violations *74 and different things," receiving stolen property, fighting, etc., and had served time. He testified he could not tell how many times he had been convicted. It is assigned as error that the court refused to permit defendant to ask the witness the length of time he served upon the conviction for receiving stolen property. Defendant testified he first met Cusumano in the penitentiary. Under these circumstances we cannot see that defendant was in anywise prejudiced by the ruling of the court upon the matter and the assignment must be overruled.
Defendant's motion for new trial refers also to instructions 1, 2 and 3, but his references thereto are all too general in nature, under Section 547.030, to preserve any question whatever for our review, other than defendant's assignment with respect thereto that "there was no evidence as to whether or not Biederman's was a corporation or a company." In State v. Ross, 312 Mo. 510, 522, 279 S.W. 411, it was held that where the evidence as to the bank there in question was offered and admitted without objection, and there was no objection that the evidence was not admissible until incorporation was proved, the question was waived. The assignment is without merit and is denied.
Complaint is made in the defendant's after trial motion that the court restricted defendant's counsel in his argument and that the State's attorney was permitted to make improper argument to the jury. Our attention is not directed to any particular portion of the argument of either counsel, nor does defendant's motion even undertake to indicate where or in what respect the argument of defendant's counsel was limited, or where or in what respect the counsel for the State transgressed the bounds of proper and legitimate argument. The motion is not sufficient to comply with the requirements of Section 547.030. But we have nevertheless carefully examined the record of the argument of each counsel now before us and find the complaints to be without substance.
Defendant's new trial motion makes several complaints of the action of the trial court in commenting on objections made by defendant's counsel, in requiring certain objections to be made out of the hearing of the jury, and in another hereinafter noted respect. Some of the purported assignments complaining of the trial court's conduct are not sufficiently definite to preserve anything for review here. The court did not comment upon the objections made. Examination of the record discloses that there was no misconduct on the part of the trial judge. In certain instances reflected in the record, defendant's counsel was earnestly and with feeling and vehemence objecting to nearly every question asked of certain witnesses by the State's attorney, and the drama of the trial became charged with considerable tension. In so objecting in such instances it is clearly apparent that the objections of defendant's counsel were addressed to the jury, instead of to the court, and it was apparently being sought by defendant's counsel to have the jury conclude that the court was not ruling impartially. Defendant's objections in some instances were so clearly "speeches" to the jury that the trial court invoked its discretion to require that some of defendant's objections be made out of the jury's hearing. In other instances defendant's counsel based motions for mistrial, which were not well founded, upon certain conclusions improperly drawn by defendant's counsel from colloquy between counsel and the court.
We have carefully studied this entire record to determine whether defendant's rights were prejudiced in any of these matters, and we must conclude that they were not. The trial court filed a memorandum touching and explaining some of these matters. But we think it is apparent from the record itself that these assignments of the new trial motion are largely the expression of the opinions and conclusions of defendant's counsel, and have no foundation in the record of the trial. It is the trial court's duty and responsibility to see that jury trials move forward with dignity and *75 with the proper decorum from all who have any part in the trials. State v. Montgomery, 363 Mo. 459, 251 S.W.2d 654, 657. Least of all should an attorney officer of the court, even when giving his emotional and intellectual best in service to his client, so comport himself that the trial court is compelled in the exercise of a sound discretion to require objections or statement of counsel to be made outside the jury's hearing.
One of these assignments complains that the trial court "erred in raising his voice * * * and refusing to strike * * * and declare a mistrial when defense counsel made a valid objection." We have examined and closely scrutinized that incident. The objection was not a valid one. The court correctly ruled the objection in question, denied a motion for a mistrial and stated, in so doing, "* * and I may say for the record [that] if the court had to raise its voice it was in order to be heard over the high shout and the high pitched voice of * * * [defendant's counsel] who constantly had his voice raised." The above occurred during the closing argument of the State's attorney. For many pages of the record before us just immediately preceding the above incident, defendant's counsel had heatedly been objecting to every statement made and had constantly interrupted both opposing counsel and the court and had engaged in obviously improper and heated colloquy and discussion. No counsel may with impunity "bait" the court and expect the court to sit idly by and permit counsel to take charge of the trial and to operate at will in his own manner. Courts may not be so operated and trials must not be so conducted. The trials of causes in courts and the administration of justice in all its aspects are functions of dignity. The dignity of court proceedings goes hand in hand with the self-government of a free people. This record reveals that the trial judge conducted himself and the trial with self-restraint and obvious impartiality. A careful examination of the record of this trial has convinced us that while there were some apparently inevitable clashes of personality and sharp differences of opinion between defendant's counsel and the State's counsel and the trial court, that the above referred to matters were largely brought about in each instance by the overanxiety of defendant's counsel when under the emotional tension of the trial. These assignments are overruled.
The record proper has been examined, and we find no reversible error therein. The judgment is affirmed.
All concur.