**STATE of Missouri, Respondent,**

v.

**Vernon Douglas ROMPREY, Appellant.**

**No. 45992.**

Supreme Court of Missouri,

En Banc.

Nov. 14, 1960.

J. K. Owens, Kansas City, for appellant.

John M. Dalton, Atty. Gen., W. H. Bates, Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Vernon Douglas Romprey, was found guilty of robbery in the first degree. The jury further found that he had been convicted of prior felonies and hence the maximum penalty of life imprisonment was imposed. See Sections 560.-120, 560.135, and 556.280(1) (all statutory references are to RSMo 1949, V.A.M.S.). He has appealed from the ensuing judgment.

The State's evidence justifies the following statement of facts: At 7:40 a. m. on Sunday, January 22, 1956, three men came to the front door of the home of Walter C. Diessl in Independence, Missouri. In response to the bell Mr. Diessl opened the door and the men forced their way into his home. All of the men were armed with pistols and two of them wore masks. They were later identified as defendant, Jesse Whitaker, and one Schwinegruber. Whitaker and Schwinegruber forced Mr. Diessl to obtain his car from the basement garage and to drive them to his jewelry store in the business section of Independence where they required him to admit them to the store and open his safe from which they took diamonds of the approximate value of $12,500. During the robbery defendant stayed at the Diessl home and guarded Mrs. Diessl and her sick mother. When Whitaker and Schwinegruber were ready to leave the jewelry store they telephoned defendant and instructed him to leave the Diessl home.

A few days later defendant, Whitaker, Schwinegruber, and one Enloe were arrested in St. Louis. Their arrest occurred when they took a car to a garage where it was observed by an off-duty policeman, Lieutenant Ziegenbein, who noticed that the car had what appeared to be a bullet hole in it. When arrested Whitaker and Schwinegruber were both carrying guns, and other weapons were found in clothing which apparently belonged to some of the men named. At that time defendant admitted that he had been in Kansas City and had driven to St. Louis on Monday, January 23.

Mr. and Mrs. Diessl went to St. Louis and identified Whitaker, Schwinegruber, and the defendant in a police line-up. At the trial they both positively identified the defendant as being the man who came to their home with Whitaker and Schwinegruber and stayed at the home while the robbery at the jewelry store was in progress. No evidence was offered by defendant.

For a more detailed statement of facts, see the companion case of State v. Whitaker, Mo.Sup., 312 S.W.2d 34.

■■ The defendant has filed no brief and we will therefore review the assignments properly made in the motion for new trial. State v. Statler, Mo.Sup., 331 S.W.2d 526. Assignments 1 and 15 contain numerous contentions of error concerning the voir dire examination of the panel. It is first said that the court erred in permitting two of the jurors to be questioned out of the hearing of the rest of the panel. The transcript reveals two instances in which

jurors were called to the bench and questioned briefly out of the hearing of the other members of the panel. That action was taken by the court when it became apparent that the jurors were confused and were about to make remarks which the remainder of the panel should not hear. There was nothing improper in following that procedure and defendant could not have been prejudiced thereby. Juror Martin was excused from the panel when he indicated that he was prejudiced against sending men to the penitentiary because of "medical conditions there" and that defendant "would be better off by far in a hospital." There is no merit in defendant's contention that such was error. The statement of Mr. Martin indicated that he would have difficulty in following the court's instructions as to punishment in the event defendant was found guilty. The court did not abuse its discretion in excusing him. The motion also contains a complaint pertaining to the action of the court in excusing juror Millikin upon challenge by the State. The transcript discloses that Mr. Millikin was not challenged by the State but by the defendant and hence defendant is in no position to complain of the action of the court in excusing him.

■ The next voir dire complaint is stated in the motion as follows: "The court wrongfully prejudiced the entire panel by making a remark during the questioning of juror Virgil L. Bruning as follows: 'First you have to find him guilty.'" A careful review of the examination of Mr. Bruning does not disclose that the court made the statement alleged to have been made. Since there is no proof that such a statement was made we need not consider the assignment further. Defendant also complains that the court erred in overruling his challenge to certain jurors named in the motion, some of whom had knowledge (obtained by newspaper, radio, etc.) concerning the crime and others having been the victim of some type of crime. We have read the voir dire examination of the jurors complained of and find that they stated that they had no opinion concerning the guilt or innocence of the defendant, were not prejudiced against him, and if chosen as jurors could return a verdict in accordance with the evidence and instructions of the court. It is obvious that no error resulted from the failure of the court to discharge those members of the panel.

The final assignment relating to the voir dire examination of the panel is as follows: "(g) The court wrongfully restricted defendant from asking the jury panel if they were in sympathy with certain propositions concerning burden of proof required in a criminal case." We have carefully searched the transcript and do not find any proof therein as to that assignment. It therefore follows that said assignment must be ruled adversely to defendant.

■ The next assignment challenges the sufficiency of the information upon the ground that it did not contain an allegation that the acts were committed by defendant "with intent to convert the same to his own use without an honest claim to said money or property on the part of the defendant, and with felonious intent to permanently deprive the said Walter Diessl of his ownership therein and without the consent of the said Walter Diessl." In considering a similar contention we recently stated that it is "unnecessary to allege a felonious intent on the part of the defendants to convert the money to their own use and to deprive the owner thereof." State v. Moody, Mo.Sup., 312 S.W.2d 816, 818. The information herein followed the language of Section 560.120 and was sufficient to charge the offense of robbery in the first degree.

■ Another assignment relates to certain testimony of officer Ziegenbein who arrested defendant and his associates. It is contended that said testimony was prejudicial to defendant because it would give the jury the impression that defendant was engaged in the commission of another crime at or about the time of his arrest. Reference is made to testimony relating to

(1) the bullet hole in the car, (2) the color of the car, and (3) the four top-coats, some of which contained guns. We do not think the evidence complained of should have been excluded for the reason stated. While it might create a suspicion that defendant was not a law-abiding person, it certainly did not prove that he had committed a crime. The officer arrested the men because he observed the bullet hole in the car which caused him to be suspicious of them. However, the bullet hole could have resulted from the accidental discharge of a weapon. The testimony explained the reason for the arrest, and it did not show that defendant had committed a crime. The other testimony complained of (color of the car and guns in nearby topcoats) would obviously not show that defendant had committed a crime. In connection with this assignment defendant complains of the admission in evidence of the gun in Whitaker's possession at the time of his arrest and a pair of black shoes taken from the car which defendant had taken to the garage in St. Louis. Mrs. Diessl identified the gun taken from Whitaker as the one used by him when he entered the Diessl home on the occasion in question. Defendant admitted to officer Ziegenbein that the shoes belonged to him, and Mrs. Diessl testified that they were the shoes worn by defendant while he was guarding her at the time of the robbery. We rule that the Whitaker gun and the black shoes were sufficiently connected with the commission of the crime charged to make them admissible in evidence.

Defendant was wearing a mask while he was in the Diessl home. In identifying defendant as the masked man who guarded her Mrs. Diessl mentioned as one item which enabled her to make the identification that he had "large dark brown eyes." Upon her cross-examination the following appears: "Q. At the time of the preliminary hearing did you state, when you were questioned by counsel, that you noticed that the defendant had large brown eyes? * * * A. The only thing I can say is that I cannot honestly say whether I did or didn't." Counsel for defendant then handed the witness a transcript of her testimony at the preliminary hearing and requested that she read all of it (apparently to herself) so that she could give a definite answer to his question "as to whether or not she mentioned that the defendant, Romprey, had large brown eyes, at the preliminary." Upon objection the court ruled that such was "improper impeachment of the witness." It is contended that the court erred in so ruling.

It should be borne in mind that defendant does not contend that Mrs. Diessl gave testimony at the preliminary hearing which contradicted her testimony at the trial to the effect that she noticed that the person guarding her had large dark brown eyes. He merely contends that she failed to testify to that fact at the preliminary hearing and apparently he desired to show that omission in an effort to impeach her credibility. As stated, the witness testified that she did not remember whether or not she testified to that fact at the preliminary hearing. In 98 C.J.S. Witnesses § 586, pp. 563, 564, it is stated that "a witness who has testified to certain facts is not discredited by having omitted to testify to such facts on a prior hearing where the additional testimony is not inconsistent with, or contradictory to, the testimony formerly given, or where on the former occasion he was not specifically interrogated as to such facts. * * * On the other hand, the omission of a witness to state a particular fact, under circumstances rendering it incumbent on him to state such fact, if true, or likely or natural that he would do so, may be shown to discredit his testimony as to such fact; and, in a proper case, the entire testimony at a former trial or hearing may be used to show failure to assert a fact which should have been asserted."

 The transcript of the testimony of Mrs. Diessl at the preliminary hearing is not before us and hence we are not in a position to say whether the applicable

questions and answers therein would have tended to discredit her testimony. If, at the preliminary hearing, the witness was asked to describe the visible physical characteristics of the masked guard and failed to state that he had large dark brown eyes we think that omission could have been shown as tending to impeach her credibility. However, a proper method of making that showing would have been to have read appropriate portions of the examination to the witness and obtained the admission that such was her testimony. If necessary all of the testimony could have been read to the witness or the transcript thereof offered in evidence in order to show the alleged omission. Some action of that nature was necessary in order to preserve the alleged error for review. Since defendant's counsel did not make any effort to show the omission by using the customary methods of impeachment we are of the opinion that the trial court did not abuse its discretion in refusing the request that the witness be required to read all of said testimony in order to refresh her memory so that she could give a definite answer to the question heretofore quoted. The witness did not have to give a more definite answer in order to lay a foundation for impeachment as her statement that she did not remember her testimony on that point was sufficient for that purpose. Mahaney v. Kansas City, Clay County and St. Joseph Auto Transit Co., 329 Mo. 793, 46 S.W.2d 817. Moreover, as we have indicated, since the transcript contains no proof or proper offer of proof that the witness at the preliminary hearing omitted to state the fact in question, under circumstances which would have made it incumbent or likely that she would have done so if such were true, the alleged error is not preserved for review and we cannot say that the ruling of the court in that connection constituted reversible error. State v. Dill, Mo.Sup., 282 S.W.2d 456.

There is no merit in assignment No. 5 to the effect that the court erred in overruling defendant's motion for judg-

ment of acquittal. The brief statement of facts heretofore set out will demonstrate that there was evidence from which the jury could reasonably have found that defendant, Whitaker and Schwinegruber acted in concert in committing the robbery charged in the information. All of the participants were identified by the witnesses and substantial evidence was adduced to prove every essential element of the offense charged.

There are a number of assignments in the motion for new trial concerning alleged errors relating to the proof of prior convictions of the defendant. At the outset it should be noted that the amended information originally charged a conviction in Texas and convictions of burglary, larceny and robbery in the first degree in Missouri. At the beginning of the trial defendant offered evidence (out of the hearing of the jury) that he was under 16 years of age at the time of the Texas conviction and the State amended the information by striking out the allegations concerning that conviction. The information actually charged and the proof showed three felony convictions in Missouri although the convictions for burglary and larceny were considered by both parties at the trial as one conviction.

State's exhibit No. 1 is a transcript of the penitentiary record concerning defendant's imprisonment and discharge resulting from the convictions for burglary and larceny. In reading that exhibit to the jury the assistant prosecuting attorney read the following: "Former Imprisonment. No. 91050 State Pen. Huntsville, Texas." Upon motion of defendant's counsel the quoted statement was stricken and the court instructed the jury to disregard it. It is contended that the court erred "in refusing to discharge the jury at the request of the defendant." The difficulty with that contention is that the defendant did not request that the jury be discharged. His only motion was that the jury be instructed to disregard the statement and that motion was

sustained and complied with by the court. Since the court granted the only relief requested by defendant it is apparent that this assignment is without merit.

 It is also contended that the court erred in admitting in evidence "certain alleged copies of the defendant's previous convictions without first requiring a proper foundation or proper identity or connection to the defendant." Apparently that assignment is intended to refer to the transcripts of penitentiary records admitted in evidence. We have repeatedly held that certified transcripts of penitentiary records are admissible. State v. Burns, Mo.Sup., 328 S.W.2d 711. In regard to the question as to whether defendant is the same person as the one named in the transcripts under consideration we note that the name in each instance is Vernon Douglas Romprey. We have heretofore stated that "Identity of names has been said to be prima facie sufficient to establish defendant's identity for the purpose of showing a prior conviction within the Habitual Criminal Act. State v. Hands Mo.Sup., 260 S.W.2d 14." State v. Reed, Mo.Sup., 298 S.W.2d 426, 428. We rule this assignment adversely to defendant.

 Assignment 16 complains of the error of the prosecuting attorney in telling the jury that the State would attempt to prove three prior convictions of defendant when the information charged only two prior felony convictions. That statement was made on voir dire examination. At that time the information charged three prior convictions, although it was thereafter amended, as heretofore explained, by striking out the charge relating to the Texas conviction. When defendant objected to the reference to three convictions a conference was held with the court and the prosecuting attorney agreed not to thereafter refer to the number of convictions. The statement complained of was not prejudicial error. In that connection we note that the form of verdict instruction (relating to the habitual criminal charge) referred to three prior convictions and the verdict returned by the jury found that defendant "was convicted of three prior felonies." The verdict was in proper form except for the use of the number "three" instead of "two" in making the finding pertaining to prior convictions. We do not believe that discrepancy constituted reversible error. It was only necessary that the jury find one prior conviction of a felony in order to be required to return a verdict imposing the maximum penalty. Under the circumstances of this case the fact that the jury found one more conviction than was finally charged in the information could not have been prejudicial to defendant. Since the jury found prior convictions it properly imposed the maximum term of imprisonment and the fact that an erroneous number of convictions was specified in the verdict would not seem to be material. In connection with this point we note that the situation in the instant case is quite different from that which existed in State v. St. Clair, Mo.Sup., 261 S.W.2d 75.

 The next assignment relates to alleged errors in the giving and refusal of certain instructions. It is said that the main verdict-directing instruction (No. 2) is erroneous because it goes beyond the scope of the information in that it contains the following: " * * * with intent to convert the same to his own use, without any honest claim to said money and property on the part of the defendant, and with felonious intent to permanently deprive the said Walter Diessl of his ownership therein, and without consent of the said Walter Diessl * * *." We have heretofore held that the quoted words were not required to be alleged in the information. Moreover, it appears that the portion of the instruction complained of is a more detailed finding of felonious intent than is required. State v. Rose, Mo.Sup., 325 S.W.2d 485. However, any of the details submitted that are not required may be regarded as surplusage. The submission would seem to have placed an unnecessary burden on the

State and hence, if error, was favorable to the defendant. The point is overruled.

There is no merit in the contention that the court erred in failing to give a "proper circumstantial evidence instruction." No circumstantial evidence instruction was given. Substantially all of the evidence in the case was direct evidence and there was no necessity for giving an instruction on circumstantial evidence. There is also no merit in the assignment that the court erred in refusing to give a proper cautionary instruction concerning the evidence of the defendant's prior convictions. Defendant offered no such instruction, but the State offered and the court gave an instruction which told the jury that "any evidence of prior convictions of the defendant is to be received not as any evidence of the defendant's guilt in this case, but only in assessing his punishment, if you find him guilty." That instruction appears to be in proper form and should have been sufficient to properly guide the jury in the consideration of the evidence referred to therein.

The final contention in regard to instructions is that "the court erred in refusing to give instructions number 11 through 13 offered by the defendant." That assignment is clearly insufficient to preserve anything for review. State v. Burkhart, Mo.Sup., 242 S.W.2d 12.

After the jury had deliberated for almost three hours it was brought into court prior to being sent to dinner. At that time the court inquired of the foreman as to the possibility of reaching a verdict and the foreman stated that he thought it was possible that the jury would be able to agree upon a verdict "but I wouldn't want to say at what hour." The court then made certain remarks concerning the desirability of reaching a verdict. Those remarks are said to have been error because they constituted an attempt "to intimidate the jury to agree on a verdict." We note that no proper objection was made to those remarks.

Moreover, under the circumstances here disclosed, we are of the view that the court's remarks were not coercive and hence were not improper or prejudicial to the defendant. State v. Roberts, Mo.Sup., 272 S.W. 2d 190; Anderson v. Bell, Mo.Sup., 303 S.W.2d 93. The contention is ruled against defendant.

Assignment No. 10 alleges that the court erred in permitting the jury to separate at the close of the first day of the trial to make arrangements for parking their cars. We find no proof in the transcript that the jury actually separated. The statement in the motion does not prove itself and hence there is nothing before us for review. State v. Stehlin, Mo.Sup., 312 S.W.2d 838.

The next assignment reads as follows: "The court erred as a matter of law by informing counsel for defendant, under pains of contempt of court, that he should not engage in retaliatory remarks with the prosecuting attorney when prosecuting attorney would deliberately ask questions that he knew would be inadmissible or prejudicial, thus unduly restricting counsel in his defense." That complaint apparently refers to the following admonition which occurred in the court's chambers and out of the hearing of the jury: "The Court: Gentlemen, the court understands that in the heat of the trial of a lawsuit lawyers get excited and do things and say things they wouldn't ordinarily do if they were not excited. I want to say to both counsel, Mr. Shute and Mr. Brown, that you will not speak out and argue in front of the jury. If you want to argue a point of evidence, then I want you to come up close to the reporter's desk and make your objections, but I won't permit you to argue back and forth with each other and with the witness. If you persist in that I am going to find you guilty of contempt. Mr. Brown: I feel that the defendant has been prejudiced and move to discharge the jury. The Court: The motion is overruled." The transcript does not reveal that defend-

ant's counsel was unduly restricted in the conduct of the defense as a result of that admonition or that defendant was in any manner prejudiced thereby. The assignment is accordingly overruled.

■ The next assignment is that the verdict is against the weight of the evidence and the result of bias and prejudice against the defendant. In various subpoints the defendant attempts to point out certain deficiencies and conflicts in the testimony. We have heretofore held that the State made a submissible case and hence the weight to be given the evidence was for the jury to determine. Defendant also asserts that the verdict resulted solely from prejudice engendered by evidence of prior convictions. The evidence of said convictions was properly admitted and we find nothing in the record to indicate that said evidence was considered by the jury for any improper purpose. The contention is without merit.

■ Assignment No. 13 that "the verdict of the jury is contrary to law" obviously does not present a reviewable question. State v. Fields, Mo.Sup., 293 S.W.2d 952.

■ The final complaint is that the court erred in failing to sustain defendant's motion to discharge the jury "when the prosecutor deliberately commented on the failure of the defendant to testify or produce evidence thus prejudicing the defendant." That assignment apparently relates to the following argument of the assistant prosecuting attorney: "Mr. Shute: * * They say there was no evidence to connect the defendant with this. Well, gentlemen, you know the facts. The defendant knows about things you don't know about. It wasn't our fault. He had as full an opportunity as we did to produce evidence." Upon authority of State v. Hayzlett, Mo. Sup., 265 S.W.2d 321, and cases cited therein, we rule that the quoted statement did not constitute a reference to defendant's

failure to testify, in violation of Supreme Court Rule 26.08, V.A.M.R.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial discloses no error.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court en banc.

HYDE, C. J., and WESTHUES, LEEDY and DALTON, JJ., concur.

Hollingsworth, J., dissents in separate opinion filed.

EAGER and STORCKMAN, JJ., dissent and concur in separate opinion of HOLLINGSWORTH, J.

HOLLINGSWORTH, Judge.

I respectfully dissent from that portion of the opinion reading as follows: "The final complaint is that the court erred in failing to sustain defendant's motion to discharge the jury 'when the prosecutor deliberately commented on the failure of the defendant to testify or produce evidence thus prejudicing the defendant.' That assignment apparently relates to the following argument of the assistant prosecuting attorney: 'Mr. Shute: * * * They say there was no evidence to connect the defendant with this. Well, gentlemen, you know the facts. *The defendant knows about things you don't know about.* It wasn't our fault. *He had as full an opportunity as we did to produce evidence.*[1] Upon authority of State v. Hayzlett, Mo.Sup., 265 S.W.2d 321, and cases cited therein, we rule that the quoted statement did not constitute a reference to defendant's failure to testify, in violation of Supreme Court Rule 26.08."

---

1. All emphasis herein is supplied.

Supreme Court Rule 26.08, Vol. 1, V.A. M.R., p. 189, provides: "If the accused shall not avail himself or herself of his or her right to testify, or of the testimony of the wife or husband, on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

I am convinced that the statement of the assistant prosecuting attorney was intended to and, in fact, did refer to defendant's failure to testify in his own behalf; and that, as held in State v. Hayzlett, supra, 265 S.W.2d loc. cit. 323, "[i]f the prosecuting attorney in fact, *either directly or indirectly*, referred to the appellant's failure to testify he is entitled to a new trial." I would, therefore, reverse and remand.