EARL STUMPF, Appellant, v. PANHANDLE EASTERN PIPELINE COMPANY and OSSIE W. STEELE.—No. 39314.—189 S. W. (2d) 223.

Division One, July 2, 1945.

Rehearing Denied, September 4, 1945.

*Crouch & Crouch, Vance Julian, Trusty & Pugh, Cowgill & Popham* and *Sam Mandell* for appellants.

*Ray Shubert, Haysler Poague, Alfred Kuraner, Johnson & Davis* and *Lowell R. Johnson* for respondents.

VAN OSDOL, C.—Appeal from a judgment entered upon verdict for defendants in an action for $75,000 damages for personal injuries.

Plaintiff-appellant, an employee of the Consolidated Electric Cooperative (hereinafter referred to as "REA"), was injured when the explosion of a dynamite charge burst the high-pressure gas pipeline of defendant-respondent, Panhandle Eastern Pipeline Company (hereinafter sometimes referred to as "defendant Company"). The escaping gas was ignited by the explosion, and flames enveloped plaintiff. The explosion occurred at a point south of State Highway Route 22 in Audrain County, about two miles west of the city of Mexico. In this locality the highway runs approximately east and west, and is paved with a 22-foot concrete slab which had been laid within a few weeks prior to the explosion. Tracks of The Alton Railroad Company and the Wabash Railroad Company are south of and parallel with the highway, the track of The Alton Railroad Company being nearer. The distance from the south line of the pavement to the north line of the right-of-way of The Alton Railroad Company is about 185 feet. The ground between the slab and the railroad right-of-way is "controlled" by the State Highway Department from whom defendant Company has secured a "permit" in 1930 to lay their pipelines across the highway. Defendant Company has two 22-inch pipelines traversing the area and passing under the railways and highway; one of the pipelines (the north one) was laid in a northeast-southwest direction, and passes under the south line of the slab at a point due north of the scene of the explosion; the angle of the crossing at the highway is 35°; the south pipeline (the one which was broken by the dynamite charge) is 70 or 80 feet away, and crosses the highway at an angle of 41° 15'. A power line of the REA is north of the highway and, coming from the west, parallels the highway until it is nearly opposite and north of the scene of the explosion where it turns and extends northwardly.

When plaintiff was injured, he and two other employees of REA were excavating a hole (at the point of explosion, being 90 or 100 feet south of the center of the highway) to accommodate an anchor by which a permanent stub pole was to be braced. It was contemplated that the permanent stub pole would sustain guy wires passing at 22-foot clearance over the highway and staying the REA power line to the northward. Such a method of bracing the northbound REA line was used at the suggestion of the State Highway Department, because there was not sufficient space north of the pavement in which to set an anchor to properly stay the line. Plaintiff and his two fellow employees, Thompson and Dubbert, had dug down about

two feet and had there encountered a hard, dark, oval obstruction which they thought to be rock, and a dynamite charge (one stick) was placed in the hole and "set off" to blast out the obstruction that they might dig deeper for the purpose of setting the anchor. The obstruction, thought to be a stone, was over or near the south pipeline of defendant Company. There was evidence that the obstruction was not a stone, but the pipeline itself.

Some weeks previously, the highway had been widened and improved by paving, and employees of the REA had moved its power line several feet northwardly to the location we have described. When this change was made, REA employees, Thompson and Dubbert, had set a temporary stub pole at a point approximately 20 feet west of the place of the explosion. The temporary stub pole and anchor were so placed (too far to the west to be aligned with the northbound REA line) because a stockpile of gravel belonging to the State Highway Department covered the place where the permanent stub pole and anchor should be set.

"Two months or more" (or five months and eleven days, according to defendants' witnesses) before the casualty, an anchor was set on the north of the highway and aligned to guy the REA power line approaching from the west. Defendant Company's foreman of drivers, defendant-respondent Ossie W. Steele, who knew the location of the gas pipelines, was then engaged nearby in work for defendant Company. Observing that Thompson and Dubbert were going to use, and did use, dynamite in making the hole to accommodate the anchor, Steele approached and warned them of the presence of a small service pipe passing along the north side of the highway; there was testimony that Steele walked over to the area south of the highway and talked with Thompson and Dubbert concerning the location of defendant Company's line with reference to the proposed site of the permanent stub pole and told them, "That won't bother anything here, there is no line there" (at the point where he had been told it was contemplated the anchor for the permanent stub pole was to be set, which point was at or near the place of the explosion). There was testimony tending to show that this advice of Steele was later communicated to plaintiff by Thompson and Dubbert. More of the evidence will be stated in the course of the opinion.

Negligence of defendants was alleged in "failing under the circumstances to maintain warning signs or markers of the location of its line, and in negligently misleading plaintiff concerning the line's location. Defendants tendered the general issue and pleaded contributory negligence. Plaintiff-appellant assigns error in the instructions given by the trial court at the instance of defendants, and in the ruling of the court in refusing to discharge the jury because of an asserted prejudicial question propounded during the cross-examination of plaintiff. Defendants-respondents assert the trial

court committed no error in the giving of instructions or in ruling upon the motion to discharge the jury; moreover, defendants say, the evidence as a whole did not establish any negligence on the part of either defendant upon which liability should be predicated, and under all of the evidence the plaintiff was contributorily negligent as a matter of law. We will first examine defendants' contentions bearing upon the question of the submissibility of plaintiff's case.

 It is urged by defendants that the REA and its employees including plaintiff were but bare licensees and consequently plaintiff was not protected by any duty of defendants to make special preparations for his safety, such as warnings of danger. Plaintiff urges the case should not be ruled by such principle; but that defendants may be subjected to liability for the negligently misleading statements of defendant Steele in his conversation with Thompson and Dubbert, afterwards communicated by them to plaintiff.

Now, according to the evidence considered in the light most favorable to plaintiff, defendant Steele (knowing or assuming to know the location of defendant Company's high-pressure gas pipeline; knowing that employees of the REA were to set and anchor a pole at or near the point of the subsequent explosion; and having observed that the employees of the REA used dynamite to blast out rock or other obstructions in holes) acted in describing the location of the line. He should have known that employees of the REA would be subjected to great danger if dynamite were exploded in proximity to the line; and that the REA employees would probably rely upon his statements and consequently fail to take precautions to ascertain the true location of the line. Under these circumstances, in our opinion, the defendant Steele in acting had a duty toward the employees of REA to exercise ordinary care in describing the location and course of the line. Vol. II, Restatement of the Law of Torts, pp. 814, 826-7 and 830, secs. 302-3 and 305.

The length of time ("two months or more," according to evidence favorable to plaintiff—five months and eleven days, according to defendants'. witnesses) between the alleged statements of Steele and plaintiff's injury is stressed by defendants. The lapse of time between the alleged negligent act of defendant Steele and plaintiff's injury was a fact of import upon the question of whose conduct was a direct, producing or efficient cause (or causes) of the injury. Vol. II, Restatement of the Law of Torts, pp. 1170-1, Comment on Clause (d), sec. 433.

 But it is said that defendant Company cannot be subjected to liability for Steele's misleading statement to Thompson and Dubbert, for the reason that defendant Company had not authorized the statement, and the statement was made outside of the scope of Steele's regular duties. The testimony of defendant Company's district

foreman, Spellman, is material upon this question. It was the testimony of Spellman that defendant Steele knew of the location of the gas lines; that, in Steele's work, if he encountered men of other utilities working along or about the pipelines who might be coming in contact with them, he would "go over and see what they were doing" and "tell them we had a pipe line there and he didn't want it damaged"; that if Steele knew others were "going to drill a hole there he would go over and tell them they were too close to our lines and ask them to move it, or ask them what they were going to do, whether they were going to put dynamite in it. There would be a lot of questions he might ask them." It is seen that Steele, in making the statement to Thompson and Dubbert concerning the location of the pipeline, was not acting in furtherance of a purpose of his own, but the statement was made in the performance of his duties within the scope of his employment and in furtherance of the business of defendant Company in the protection of its property. The recognized rule is that an employer is liable to a third person for any injury to either person or property which results proximately from tortious conduct of the employee acting within the scope of his employment. 35 Am. Jur., Master and Servant, p. 983, sec. 552. And see Milazzo v. Kansas City Gas Co., Mo. Sup., 180 S. W. 2d 1, for a careful study of the rule.

As stated, it is contended that plaintiff was contributorily negligent as a matter of law.

Plaintiff knew gas pipelines traversed the area. He must have known that an explosion of dynamite near a pipeline would be dangerous. Conveyances and maps showing the location and course of defendant Company's lines were recorded or filed in the office of the recorder of deeds at Mexico. Markers over each of defendant Company's pipelines were standing in the fence row on the north line of the highway right-of-way, and a vent pipe stood over the south line at the fence along the north line of The Alton Railroad Company's right-of-way. A small building belonging to defendant Company stood south of the right-of-way of the Wabash Railroad Company; the building housed defendant Company's regulators and valves by which gas pressure was reduced into a line supplying gas to the city of Mexico. Formerly a marker showing the location of defendant Company's line had been in the area used for the stockpile of gravel. Prior to the explosion, the stockpile had been moved and the underlying earth's surface "bladed"—the marker had not been replaced, however. The "backfill" or crown of earth along the gas lines of defendant Company was perceptible north of the highway right-of-way and south of the Wabash right-of-way; but the crown could not be seen in the area of the explosion where the earth had been bladed off smoothly.

It is not considered that the use of an explosive under all circumstances is in itself negligence, although one who uses an explosive should, in the exercise of ordinary care, use those precautions which are commensurate with the potentialities of the article and its use under the circumstances. Plaintiff, in using dynamite to blast out the obstruction in the hole in view of his knowledge and under the circumstances and surroundings, should, in the exercise of ordinary care for his own safety, have taken minute precautions to ascertain the location of defendant Company's line; yet, considering the advice of defendant Steele, which was a fact or circumstance to be considered (if it is believed that such advice was given and communicated to plaintiff), we believe it should not be held that plaintiff's failure to avail himself of the means of ascertaining, and to ascertain, the presence and course of the pipeline should defeat his recovery as a matter of law. The contention is ruled against defendants.

We hold that plaintiff made out a case submissible to the jury.

 Contributory negligence was hypothesized in failing to exercise care in ascertaining the presence and course of the pipeline (Instruction Number 6); and in failing "to note the presence . . . of defendant company's signs, vents or markers . . . or . . . to notice the crown of earth . . . over the pipeline of defendant company or . . . to note other evidence . . . of the whereabouts or course of said pipeline . . . " (Instruction Number 7). Both instructions directed a verdict for defendants, if it were found and believed that such failure on the part of the plaintiff was negligence and that such negligence "caused or contributed to cause plaintiff's injury."

It is contended that these instructions are erroneous in failing to advise the jury that the contributory negligence hypothesized should *directly* contribute to cause the injury of plaintiff.

In order for contributory negligence to legally bar the plaintiff's recovery, it is not sufficient that plaintiff was negligent and that such negligence contributed to the cause, or was a contributing cause, of his injury—a contributing cause but for which the injury would not have been sustained. The negligence of plaintiff must have been a proximate cause, that is, a "proximate cause" as the term is used in expressing a cause which may be reasonably regarded as a direct, producing or efficient cause; or as entering into and forming a part of the direct, producing or efficient cause of the injury. Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S. W. 2d 103; Hires v. Letts Melick Grocery Co., Mo. Sup., 296 S. W. 408; Oates v. Metropolitan St. Ry. Co., 168 Mo. 535, 68 S. W. 906. (As is sometimes expressed, plaintiff's negligence "is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm . . . " Vol. II, Restatement of the Law of Torts, p. 1229, sec. 465. And see Vol. II, Restatement of the Law of Torts,

p. 1159, sec. 431; and Giles v. Moundridge Milling Co., 351 Mo. 568, 173 S. W. 2d 745, treating with the negligent conduct of a defendant. And in some cases other questions may have to be considered in determining whether an actor's conduct should be held to be a "proximate cause" in the sense that the conduct should be held to be a legal cause of an injury. (Secs. 431, 465, Restatement of the Law of Torts, supra.) As a rule an instruction submitting the issue of contributory negligence should direct in substance and effect that if the jury finds plaintiff was contributorily negligent as specified, and that such negligence of plaintiff directly (or proximately) contributed to his injury or to cause his injury, he cannot recover. Mahaney v. Kansas City, Clay County & St. Joseph Auto Transit Co., 329 Mo. 793, 46 S. W. 2d 817; 38 Am. Jur., Negligence, p. 1084, sec. 368; 45 C. J., Negligence, p. 1345, sec. 920; 102 A. L. R. 412; and comment of the court, King v. Rieth, 341 Mo. 467 at page 475, 108 S. W. 1 at page 5. See also Lackey v. United Rys. Co., 288 Mo. 120, 231 S. W. 956, in regard to the submission of a defendant's negligence. But it is argued by defendants that, if (as the instructions hypothesized) plaintiff was negligent in failing to note the presence and course of defendants' pipeline, such negligence *necessarily* "directly" contributed to cause his injury. In a case where, under the circumstances, a plaintiff's negligence contributed to cause his injuries, it was asked by the court, "how could it be possible it contributed at all save *directly?*" White v. United Rys. Co., 250 Mo. 476, 157 S. W. 593. In that case, however, the court found it unnecessary to answer the question. The case of Barrett v. Town of Canton, 338 Mo. 1082, 93 S. W. 2d 927, recognized an exception (to the rule) as stated in Barr v. Missouri Pac. R. Co., Mo. Sup., 37 S. W. 2d 927 at page 930, "If an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the injury and necessarily formed a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom." (And see again Lackey v. United Rys. Co., supra.) The exception, therefore, embraces those cases where the hypothesized negligent acts of plaintiff permit no reasonable inference but the inference that the negligence was a direct, producing or efficient cause of the casualty.

In our case it is true that if plaintiff by the exercise of ordinary care could have observed and ascertained, and had ascertained, the course of defendants' pipeline, he would not have placed the charge of dynamite in proximity to the pipeline and so would have not been injured. However, the facts of the case do not compel the inference that the plaintiff's negligent failure to observe, hypothesized in the instructions, was a direct, producing or efficient cause of the casualty, and the question should have been left to the jury. If it were the

fact that defendant Steele by his statements negligently misled the plaintiff, the jury could have reasonably believed that such negligence of defendants was not only a direct, producing or efficient cause, but the direct, producing or efficient cause of plaintiff's injury, and that the negligence of plaintiff under the circumstances was a cause which should not be reasonably regarded as a direct, producing or efficient cause for which plaintiff should be considered responsible. And, assuming the jury did so believe, the instructions (Numbers 6 and 7) nevertheless authorized the jury to find for defendants. We regard Instructions Numbers 6 and 7 as prejudicially erroneous.

Instruction Number 6 is erroneous in another respect. By it the jury was advised that "persons engaged in the discharge of dynamite or other explosives are under a duty to exercise *such care as a very prudent man* would exercise in carrying on such work . . . " (Our italics.) Negligence is generally defined as the failure to exercise ordinary care, that care which an "ordinarily prudent man" (not a very prudent man) would exercise under the same or similar circumstances. Such standard of care usually obtains except in such instances where, by statute or ordinance, there is an absolute duty or a higher standard provided. Of course, ordinary care is a relative term, and its exercise requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances. In the case of Dowell v. Guthrie, 116 Mo. 646, 22 S. W. 893, cited by defendants, an instruction given at the instance of plaintiff-appellant contained the language (116 Mo. at page 651), "the only question in this case is, whether the defendants used that care and caution in handling . . . the explosives that *cautious and prudent persons* would have used under the circumstances; . . . " (Our italics.) Notice that the error in stating the standard of care was in favor of appellant. Although the court stated (116 Mo. at page 655) the instruction very clearly and fairly defined "the degree of care incumbent upon the defendants, under the circumstances of the case," it is clear that this reference to "degree of care" was intended as a reference to the care and caution of an ordinarily prudent person inasmuch as, in the same paragraph, the court said that different minds might arrive at different conclusions "as to whether the defendants in handling the explosives exercised that degree of care which *ordinarily* ▮▮▮ *prudent persons* would have exercised under the circumstances." (Our italics.) The case of Schaefer v. Frazier-Davis Const. Co., Mo. App., 125 S. W. 2d 897, cited by defendants, is representative of cases holding a defendant proprietor of land liable, regardless of the exercise of care, if his use of explosives in blasting *"involves a direct invasion of the premises of an adjacent proprietor."* See Hoffman v. Walsh, 117 Mo. App. 278 at page 286, 93 S. W. 853 at page 855.

■ Upon another trial of this cause, a burden of proof instruction given at defendants' instance may be so drafted as to avoid errors such as are disclosed in defendants' Instruction Number 8 herein. Instruction Number 8 advised the jury that the *"mere fact* that the plaintiff sustained an injury does not make the defendants or either of them liable in this case nor does it raise any presumption that such injury or any consequence thereof were sustained by any fault or want of care on the part of the defendants or either of them, but before the plaintiff is entitled to have a verdict at your hands against the defendants or either of them, the burden is upon the plaintiff to prove his case against such defendant or defendants *to your reasonable satisfaction* by a preponderance of the credible evidence of the case. . . ." (Our italics.) The instruction is argumentative, and the cautionary "mere fact" unnecessary. Furthermore, this court has criticized the use of such a requirement as "to your reasonable satisfaction" in a burden of proof instruction in a civil action as casting a greater burden of proof upon the party (having the burden of proof upon an issue) than should be required under the law. Pagett v. Missouri Motor Distributing Corporation, Mo. Sup., 177 S. W. 2d 490; Johnson v. Dawidoff, 352 Mo. 343, 177 S. W. 2d 467; and Seago v. New York Central R. Co., 349 Mo. 1249, 164 S. W. 2d 336.

■ Instructions Numbers 4 and 5, given at defendants' request, instructed the jury that defendants were under no duty to plaintiff to erect warning signs or markers to indicate the location of the pipeline. Plaintiff contends that these instructions are in conflict with Instruction Number 1, given at plaintiff's instance, wherein defendants' alleged negligent failure under the circumstances to maintain warning markers was hypothesized in the conjunctive with the hypothesized negligent misleading of plaintiff. And plaintiff further contends that Instructions Numbers 4 and 5 are erroneous in that defendants, having maintained signs and markers for a long period of time prior to the explosion, assumed the duty of continued maintenance. Apparent conflict in instructions may be obviated at another trial. And it may be stated that plaintiff's trial theory of negligence of defendants, and as alleged in his petition, was not based upon a duty (legal because assumed) of defendants to maintain warning markers.

We believe it unnecessary to review the assignment of error in refusing to discharge the jury because of the asserted prejudicial effect of a question asked plaintiff by defendants' counsel. It is not probable that a like problem will confront the court upon another trial of the cause.

Reversed and remanded. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Van Osdol, C., is adopted as the opinion of the court. All the judges concur.