Jesse Lee DANNER, Appellant,

v.

William Arthur WEINREICH, Jr., Respondent.

No. 46484.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

Motion for Rehearing or to Transfer to Court En Banc Denied

May 11, 1959.

H. Townsend Hader, Lexington, D. D. Thomas, Jr., Carrollton, S. David Trusty, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant.

Jack C. Jones, Carrollton, Darold W. Jenkins, A. Lamkin James, James & Jenkins, Marshall, for respondent.

BOHLING, Commissioner.

Jesse Lee Danner sued William Arthur Weinreich, Jr., for $30,000 damages for personal injuries and $1,250 for damages to and loss of use of his truck. Mr. Weinreich filed an answer, consisting of a general denial, coupled with pleas of contributory negligence, and a counterclaim asking $10,-000 damages. A trial was had almost four years later. Each party submitted his claim against the other on primary negligence only. There was a nine-juror verdict for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim. Plaintiff has appealed and claims error resulted from the giving of defendant's instructions on plaintiff's contributory negligence and in excluding certain testimony.

Respondent adopted the "Statement" of appellant so far as material to the issues discussed.

About 6:30 a. m. June 8, 1953, a clear, dry day, Mr. Danner and his son were westbound on Highway 24, a concrete highway, to his truck farm in his 1951 three-quarter ton Chevrolet pickup truck. Mr. Danner was driving at a speed of 35 to 40 miles an hour. Mr. Weinreich and his father-in-law were westbound on Highway 24 in Mr. Weinreich's 1950 Ford pickup truck. They were taking eight hogs weighing 2,800 pounds to Kansas City. The highway had a down-grade S Curve for westbound traffic near the scene of the collision, and was then straight and practically level for some distance. Mr. Danner's truck patch was a little over a mile east of Napoleon, Missouri, on the south side of Highway 24, with its entrance about 150 feet west of the foot of the S curve.

Mr. Weinreich said that he had followed the Danner truck for "a mile or two" down the S curve at a speed of 35 miles an hour, staying five or six truck lengths back, and when they reached the foot of the hill and were about 60 feet apart he shifted his truck into second gear, honked his horn, and started to pass the Danner truck in the left traffic lane. He said, "I picked up speed and when I got ten or fifteen feet behind his truck, he stuck his arm out and pulled over all at the same time. At that time I put on my brakes and tried to get around [to the right] to try to avoid an accident. Seemed he had slowed or stopped and I caught that truck about that much distance from the edge and I never broke a board on it." He estimated his speed at the time of impact at 35 to 40 miles per hour. His truck turned over and stopped in the north ditch of the highway.

Mr. Danner says that he slackened the speed of his truck as he descended the S curve and near the bottom of the hill held his hand out, "stuck straight out for a slow stop sign," and that he pulled over towards the right shoulder and stopped on the pavement, 20 or 30 feet east of his driveway, to let an eastbound car pass. Danner testified he was stopped for two or three seconds; that he looked in his rear view mirror (evidently on the side of his truck for he testified he could not see out of the rear view mirror in the cab because the endgate was up); that he could see back approximately 150 feet and there was no traffic behind him; that after the eastbound car (which Weinreich said he did not see) passed, he put his hand out, signalled for a left-hand turn, and started moving southwest across the highway towards his driveway; that he heard brakes screeching when half of his truck "was on the black line" and he looked out of his door window and saw Weinreich's truck, about 50 or 60 feet away, on the south side of the pavement coming right at him at a high rate of speed, 60 or 70 miles an hour. Plaintiff adduced testimony that no horn was heard. He "stepped on the gas," trying to get out

of the way, and Weinreich cut back northwest and the left front end of his truck hit the right-hand corner of Danner's truck. The collision caused the Danner truck to turn over twice and stop on the south side of the highway headed back east about 70 feet west of the point of impact.

Highway Patrolman Gerhig, who arrived soon after the collision, testified that the Weinreich truck left double skid marks 75 feet in length, beginning in the north lane of the pavement, crossing the center line into the south lane, and then back to the north lane to the point of impact.

We quote the material portions of the instructions here involved, supplying the emphasis in each instance:

Instruction 10, after stating plaintiff was required to exercise the highest degree of care in turning off the highway and defining "the highest degree of care," informed the jury that if "Mr. Danner in pursuing his intention to turn off the highway failed to exercise such highest degree of care and you find the facts to be that he turned off to his left at a time when he knew or should have known that the defendant was starting to pass him and in so doing a collision resulted and that Mr. Danner's action in so turning, under those circumstances, was negligent and * * * that his negligence, if so, *either* directly caused the collision, *or* * * * *that Mr. Danner's negligence,* if so, *merely contributed to cause the collision* * * * Mr. Danner is not entitled to a verdict in this case. * *"

Instruction 11 told the jury if they found "that the Weinreich vehicle was in the act of overtaking the Danner vehicle"; that defendant "sounded his horn," warning plaintiff of his presence and intention to pass plaintiff's vehicle; that defendant "turned his truck into the south or lefthand lane of travel in order to overtake and pass" plaintiff's truck; that as defendant's truck approached plaintiff's truck plaintiff "knew, or by the exercise of the highest degree of care could have known" that defendant "was attempting to overtake and

pass to the left of his truck"; that plaintiff "turned his truck to his left and into the south lane of travel and directly in the path of" defendant's truck "and in such close proximity to" defendant's truck that defendant "could not, by the exercise of the highest degree of care on his part, avoid a collision," and that in so doing plaintiff was negligent, and that such negligence *"contributed directly and proximately to the cause of the collision,"* then plaintiff was contributorily negligent and the verdict must be for defendant.

Instruction 12 dealt with negligence on the part of both parties. It told the jury "* * * that even though you find * * * that * * * Weinreich was negligent, as set forth in other instructions, yet if you further find * * * that * * * Danner was also negligent, as set out in other instructions, and that the negligence of the plaintiff Jesse Danner, if any, *concurred in any degree, however slight,* with the negligence of Arthur Weinreich * * * in causing the collision, * * *" neither party should recover against the other.

Defendant filed no motion for new trial and makes no point that plaintiff failed to make a case for the jury.

■ Instructions on contributory negligence should require findings that plaintiff was guilty of the act of commission or omission attributed to plaintiff; that such conduct constituted negligence on plaintiff's part, and that this negligence of plaintiff, if any, directly contributed to plaintiff's injury; that is, plaintiff's negligence entered into and formed a part of the direct, producing or efficient cause of the injury, without which the casualty would not have happened. Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 227[7–10], and authorities cited; Mahaney v. Kansas City, Clay County & St. Joseph Auto Transit Co., 329 Mo. 793, 46 S.W.2d 817, 821[7]; Annotation, 102 A.L.R. 411.

■ An exception with respect to a finding of proximate causation exists: " 'If an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the injury and necessarily formed a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom.' " Stumpf v. Panhandle Eastern Pipeline Co., supra [354 Mo. 208, 189 S.W.2d 228], quoting; Carr v. City of St. Joseph, Mo., 225 S.W. 922, 923[4]; White v. United Rys. Co., 250 Mo. 476, 157 S.W. 593, 597.

In holding the phrase "contributed in the least degree" in a contributory negligence instruction erroneous, we said: "It is not the law that *the least negligence of him who is hurt* will excuse an otherwise guilty tortfeasor for his negligent act. * * * The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing and efficient cause of the casualty, and absent which the casualty would not have happened." Howard v. Scarritt Estate Co., 267 Mo. 398, 402, 184 S.W. 1144, 1145[2]. See also Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 377[14], citing cases; 65 C.J.S. Negligence § 129, p. 742.

We have said the purpose of a verdict-directing instruction "is to make clear to the jury the essential fact issues which they are called upon to decide, and that where the evidence relating to such issues is conflicting and divergent, some of it supporting and other portions opposing the particular verdict, the instruction should in that event hypothesize, either by express recital or by reference to other instructions, the facts essential in law to support the verdict, whether it be to direct or to defeat a right of recovery. [Citing cases.]" Ferguson v. Betterton, 364 Mo. 997, 270 S.W. 2d 756, 761.

Instructions 10, 11 and 12 are verdict directing instructions. One cannot say without speculation which instruction or in-

structions the jury followed in arriving at their verdict.

■ "Directly" or "proximately" in a contributory negligence instruction functions to preclude a finding against plaintiff for remote contributory negligence. Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 914[1].

The phrase "merely contributed to cause" when read in connection with the alternative causal submission of "either directly caused" in instruction 10 connotes something less than a direct, producing or efficient contributing cause. See Oates v. Metropolitan St. Ry. Co., 168 Mo. 535, 548, 68 S.W. 906, 909(2), 58 L.R.A. 447 (holding "but contributes to the injury" with respect to plaintiff's negligence would defeat a plaintiff's verdict for remote contributory negligence and was error), and the reasoning in White v. United Rys. Co., 250 Mo. 476, 490, 157 S.W. 593, 597[3]. Defendant's trial theory was that plaintiff made his left turn into the south lane of the highway at a time when defendant, in the south lane, was in the act of passing plaintiff and in such close proximity to plaintiff as to create a hazardous situation and when defendant could not in the exercise of the highest degree of care avoid the collision, but instruction 10 does not hypothesize either of said defenses. The testimony favorable to plaintiff and that favorable to defendant was conflicting and divergent on this issue. The factual submission that plaintiff "turned off to his left at a time when he knew or should have known that defendant was starting to pass him and in so doing a collision resulted" does not submit negligent acts necessarily contributing as a matter of law directly to the collision under the facts of record.

Instruction 12 informed the jury neither party was entitled to recover if the jury found defendant was negligent "as set forth in other instructions" and found that plaintiff "was also negligent, as set forth in other instructions," and that plaintiff's negligence "concurred in any degree, however slight," with the negligence of defendant in causing the collision. The only causal submission of defendant's negligence was that the hypothesized negligence of defendant "directly resulted in the collision" and plaintiff's injuries and damages. The phrases "merely contributed to cause the collision" (instruction 10), and "concurred in any degree, however slight" (instruction 12), with respect to the negligence of plaintiff are used as argumentative phrases to emphasize the duty of plaintiff. Negligence which is a slight or remote cause is not a defense. The duty of plaintiff is accentuated and the duty of defendant is minimized in instructions 10 and 12.

In the Stumpf case, supra, 189 S.W.2d 227[7–10], contributory negligence instructions authorized a defendant's verdict on findings that hypothesized acts of plaintiff not necessarily forming a part of the efficient cause of plaintiff's injuries constituted negligence, and that such negligence "caused or contributed to cause plaintiff's injury." A defendant's judgment was set aside because of the omission of the word "directly" before "contributed" in the instructions. Conrad v. Hamra, Mo. App., 253 S.W. 808, 811[5, 6], is to like effect.

The following modifying phrases have been considered to weaken the element of causation in a contributory negligence instruction and to be erroneous. Contributed "in the least degree" (Howard v. Scarritt Estate Co., supra; Monroe v. Chicago & A. R. Co., 280 Mo. 483, 489, 219 S.W. 68, 69[4, 5]); "in any degree" (Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W.2d 103, 107[10]; Cento v. Security Bldg. Co., Mo., 99 S.W.2d 1, 7[12]; Hires v. Letts Melick Grocery Co., Mo., 296 S.W. 408, 410[2]; Monroe v. Chicago & A. R. Co., supra; Bobos v. Krey Packing Co., 317 Mo. 108, 118, 296 S.W. 157, 161[6]); "in any way" (Hires v. Letts Melick Grocery Co., supra [296 S.W. 410]; Roberson v. Loose-Wiles Biscuit Co., Mo.App., 285 S.W. 127, 130;

King v. Rieth, 341 Mo. 467, 108 S.W.2d 1, 5[8]).

We conclude that instructions 10 and 12 misstated the law, misdirected the jury and were prejudicial.

Plaintiff's complaint of instruction 11 is that instructions 10, 11 and 12 "were repetitious, prejudicially emphasizing the issue of contributory negligence, and were conflicting, misleading and confusing." Instruction 11 demonstrates that counsel was aware of the proper phrasing here involved for submitting plaintiff's contributory negligence as a defense; whereas instructions 10 and 12 tend to lecture the jury on plaintiff's contributory negligence and misstate the applicable law in so doing.

We think the cases relied upon by defendant are distinguishable from the instant case in the essential fact issues submitted to establish the contributory negligence of plaintiff or the language used in submitting causation did not defeat a recovery for remote contributory negligence. White v. United Rys. Co., 250 Mo. 476, 157 S.W. 593, 597; Barr v. Missouri Pac. R. Co., Mo., 37 S.W.2d 927, 930 [7–9]; Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 531[3]; Henson v. Jasinsky, Mo., 251 S.W.2d 601, 606[9]; Young v. Kansas City Public Service Co., Mo., 270 S.W.2d 788, 791[9, 10]. The instructions discussed in Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 250 [16], and Ketcham v. Thomas, Mo., 283 S.W.2d 642, 648[9], involved the joint negligence of two defendants. Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S.W.2d 606, 610[11], upheld plaintiff's converse sole cause instruction which required a finding that the submitted humanitarian negligence of defendant "directly contributed in any degree" to the collision involved. In Kunz v. Munzlinger, Mo., 242 S.W.2d 536, 541 (involving the converse of a defendant's sole cause instruction), and Roeslein v. Chicago & E. I. R. Co., Mo., 214 S.W.2d 13, 17, phrases tending to lessen the required causal connection are criticized.

Counsel for plaintiff in his cross-examination of defendant asked: "Let me ask you in what distance on regular concrete pavement with the load you had on and new re-lined brakes and the condition your truck was in, what distance could you bring to a stop at forty miles an hour? A. I never did drive that way— Q. Well, do you have any judgment? A. I don't know." Following an objection to "further examination on this point" and the court's statement: "The witness says he didn't know," plaintiff's counsel said: "I would like to ask him if at forty miles an hour, could he stop his truck at a distance of seventy-five feet." The court sustained a general objection to the question. Counsel was asking for defendant's best judgment, and evidence of the distance in which an automobile traveling at a given rate of speed can be stopped is ordinarily relevant and competent. Tucker v. Carter, Mo.App., 211 S.W. 138[8]; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131 [8, 9]. Consult City of Festus ex rel. and to Use of Stolzer v. Kausler, Mo.App., 77 S.W.2d 197[3]. The court knows that at 40 miles an hour a car moves about 59 feet a second (9C Blashfield, Cyclopedia of Automobile Law, § 6237), and if defendant reacted normally, in three-quarters of a second, his truck traveled 44 feet during the reaction time. This should sufficiently demonstrate defendant's inability to have stopped his truck in 75 feet while traveling 40 miles an hour. In view of defendant's answer that he did not know in the circumstances of record in what distance he could stop, plaintiff's trial theory that defendant was negligent in failing to maintain a proper lookout and in driving at an excessive speed, and the absence of testimony on behalf of plaintiff as to defendant's ability to have avoided the collision by stopping under the humanitarian doctrine (the only negligence involving defendant's stopping pleaded by plaintiff), the court's ruling upon this assignment did not materially affect the merits of plaintiff's claim and does not require the granting of a new trial. Section 512.160 RSMo

1949, V.A.M.S.; Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95 [5].

For error in giving instructions 10 and 12, the judgment is reversed and the cause is remanded.

BARRETT, C., dissents.

STOCKARD, C., concurs in result.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.