Susan A. VANASSE,
Plaintiff-Respondent,

v.

Rebecca Louise PLAUTZ,
Defendant-Appellant.

No. KCD 27858.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Patrick J. Eng, Welliver, Atkinson & Eng, Columbia, for defendant-appellant.

Larry M. Woods, Sapp, Woods & Orr, Columbia, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

A collision between an automobile operated by defendant (hereinafter referred to as appellant) and a motorized (electric) wheelchair operated by plaintiff (hereinafter referred to as respondent), resulting in damage to said wheelchair, generated this appeal. In the lower court a jury was waived and the cause was tried to the court which found for respondent and awarded her damages in the sum and amount of $453.00. Appellant contends the judgment below cannot stand for the reason that recovery by respondent is legally barred because she was guilty of contributory negligence. The "wheres" and "whys" of appellant's contention will be more finitely stated after relating the evidence.

Respondent, a physically handicapped person, was a student at the University of Missouri, Columbia. On the evening of November 30, 1972, at approximately 10:30 P.M., while accompanied by another physically handicapped student (Mr. Cobb) who was also in a motorized wheelchair, she was en route to her student residence in Columbia, Missouri. The wheelchair occupied by respondent was electrically powered and had a maximum forward speed, absent the aid of gravity, of one and one-half miles per hour.

Both wheelchairs were proceeding south on South Park Drive, a two-lane, two-way street absent parallel sidewalks on either side. No other route was available to respondent to reach her place of residence.

Going south, South Park Drive was slightly downgrade. The surface of the street was asphalt. It was clear and dry at the time and the street was lighted by street lights alternately spaced approximately fifty feet apart on both sides of the street.

Respondent, dressed in white attire, was proceeding south in her wheelchair in the right hand or southbound traffic lane and Mr. Cobb was proceeding south in his wheelchair in the left hand or northbound traffic lane. The evidence is conflicting regarding whether respondent was in the middle of the right hand or southbound traffic lane as she proceeded south, or whether she was within a distance of approximately one foot of some cars that were parked parallel to the west curbline of South Park Drive. The evidence is hazy regarding whether the respective wheelchairs of Mr. Cobb and respondent at the time of the collision were directly opposite each other or whether one was slightly ahead or slightly behind the other.

Appellant, driving a "Volkswagen", pulled onto South Park Drive approximately two and one-half blocks south of where the collision ultimately occurred. She proceeded north on South Park Drive in the northbound traffic lane (her right hand lane) at a speed variously described as approximately "ten miles per hour" and "thirty, forty miles an hour". Appellant, according to her own testimony, turned her headlights on before she pulled onto South Park Drive. However, according to respondent's testimony, the headlights on appellant's car were not turned on until appellant's Volkswagen reached a point approximately ten feet away from respondent. Respondent was able to see and observe the Volkswagen driven by appellant from the time it pulled onto South Park Drive.

There were no lights or "reflective" devices of any kind on respondent's wheelchair. Mr. Cobb's wheelchair also lacked lights. However, it was equipped with some type of "reflective strips".

Appellant, as she proceeded north in the northbound lane of South Park Drive, according to her own testimony, did not see the wheelchair occupied by Mr. Cobb until she was approximately five feet from it. Immediately upon seeing it, she swerved to her left and, although she avoided striking the wheelchair occupied by Mr. Cobb, she

struck the wheelchair occupied by respondent. She never saw the wheelchair occupied by respondent until the moment of impact. According to respondent, she swerved her wheelchair to the right when the Volkswagen driven by appellant was approximately ten feet away.

Respondent testified that at the scene following the collision, appellant stated to her: "I'm sorry, I didn't see you. My windshield was fogged up." Appellant's own testimony confirmed that the windshield of the Volkswagen she was driving was "a little bit frosted" and that she intended to stop at the top of the hill (a point north of where the collision occurred) and clean it off because "[she] just thought, to be a safe driver that [she] should clean it off."

Appellant, on the basis of the facts heretofore iterated, notwithstanding her tacit admission that she herself was guilty of actionable negligence, spiritedly contends that recovery by respondent is barred because respondent was guilty of contributory negligence as a matter of law. Alternative approaches are taken by appellant to advance this contention. First appellant contends that respondent's motorized wheelchair constituted a "vehicle" as defined in paragraph (8) of Section 307.020, RSMo 1969, the obtaining statutory definition of "vehicle" in force at the time of the collision in question with respect to Sections 307.040 and 307.115, RSMo 1969,[1] and respondent's failure to have "lighted lamps" thereon as required by Sections 307.040 and 307.115, supra, constituted "negligence", i. e., contributory negligence, and, such directly caused or directly contributed to

cause the resultant damages which she sustained, all as a matter of law. Second, should it be determined that the motorized wheelchair occupied by respondent was not a "vehicle" within the purview of the statutory definition set forth in paragraph (8) of Section 307.020, supra, and therefore legally immune from the positive requirements of Sections 307.040 and 307.115, supra, appellant contends that respondent was nevertheless guilty of contributory negligence, as measured by the common law standard of ordinary care, in operating said wheelchair at nighttime on a "public highway" without any lights or signaling devices of any kind, or in failing to operate said motorized wheelchair on her left hand side of the street since her status was that of a pedestrian if the motorized wheelchair was not a "vehicle", either or both of which directly caused or directly contributed to cause the resultant damages which respondent sustained, all as a matter of law.

 Appellate review of this court tried case is governed by Rule 73.01 as recently construed by the Supreme Court of Missouri, en banc, in *Murphy v. Carron*, 536 S.W.2d 30, handed down May 5, 1976: ". . . the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution

---

1. Section 301.010, RSMo 1969, found in Chapter 301, captioned, "REGISTRATION AND LICENSING OF MOTOR VEHICLES AND OUTBOARD MOTORS" was amended by Laws 1974, p. 875 (House Bill 883) and now reads: "Definitions.—As used in chapter 301 and sections 304.010 to 304.040, 304.120 to 304.260 *and 307.010 to 307.175, RSMo,* the following terms mean:

\* \* \* \* \* \*

(30) 'Vehicle', any mechanical device on wheels, *designed primarily for use on highways,* except those propelled or drawn by human power, or those used exclusively on fixed rails or tracks." (Emphasis added.)

Section 301.010, RSMo 1969, prior to said amendment, made no reference to Sections 307.010 to 307.175, RSMo 1969. Anomalously, the enactment clause of House Bill 883 makes no mention of repealing Section 307.020, RSMo 1969. This opinion does not purport to decide whether the above amendment repeals the definition of "vehicle" contained in paragraph (8) of Section 307.020, RSMo 1969, by implication. Nor does this opinion purport to decide whether a motorized wheelchair under present law is a "vehicle" for purposes of the lighting requirements of Sections 307.040 and 307.115, RSMo 1969.

and with a firm belief that the decree or judgment is wrong." Bearing this template of appellate review in mind, the grounds urged by appellant for outright reversal of the judgment below will be separately discussed.

Was the motorized wheelchair occupied by respondent a "vehicle" within the statutory definition that prevailed at the time [paragraph (8) of Section 307.020, supra], thereby subjecting respondent to the light regulations found in Sections 307.040 and 307.115, supra? This is a case of first impression in this state, fleeting though our holding may be (footnote 1, supra).

Paragraph (8), Section 307.020, supra, with respect to the applicability of Sections 307.040 and 307.115, supra, defines "vehicle" as follows: " '*Vehicle*' means *every device* in, upon or by which a person or property is or may be transported upon a highway, *excepting devices moved by human power or used exclusively upon stationary rails or tracks* ;". (Emphasis added.) So far as here pertinent, Section 307.040, supra, provides: "No person shall drive, move, park or be in custody of *any vehicle* . . . on any *street* or highway during the times when lighted lamps are required unless such *vehicle* . . . *displays lighted lamps and illuminating devices* as this chapter required. . . ." (Emphasis added.) Section 307.115, supra, so far as here pertinent provides: "All vehicles . . . shall be equipped during the times when lighted lamps are required with at least one lighted lamp or lantern exhibiting a white light visible from a distance of five hundred feet to the front of such vehicle . . . ." Both appellant and respondent, intentionally or otherwise, have at various times indiscriminately addressed the issue in terms of whether the motorized wheelchair was or was not a *motor vehicle*. It is patently obvious that the legislature advertently chose to include a broader array of vehicles than the ordinary concept of motor vehicles within the purview of Sections 307.040 and 307.115, supra, as witnessed by the broad and all-inclusive definition of "vehicle" set forth in paragraph (8) of Section 307.020,

supra, and as further witnessed by the fact that on the other hand "vehicle" as used in Chapter 301, RSMo 1969 ("*REGISTRATION AND LICENSING OF MOTOR VEHICLES AND OUTBOARD MOTORS*") and Sections 304.010 to 304.040 and Sections 304.120 to 304.570 in Chapter 304, RSMo 1969 ("Traffic Regulations"), is more limitedly defined in paragraph (30), Section 301.010, RSMo 1969, as follows: " 'Vehicle', any mechanical device on wheels, *designed primarily for use on highways,* except those propelled or drawn by human power, or those used exclusively on fixed rails or tracks." (Emphasis added.) Additionally, paragraph (17) of Section 301.010, RSMo 1969, separately defines "motor vehicle" as follows: " 'Motor vehicle', any self-propelled vehicle not operated exclusively upon tracks, except farm tractors;". When the definition of "vehicle" [paragraph (8) of Section 307.020, supra] as used in Sections 307.040 and 307.115, supra, is juxtaposed with the definitions of "vehicle" and "motor vehicle" [paragraphs (17) and (30) of Section 301.010, supra] as used in Chapter 301, supra ["*REGISTRATION AND LICENSING OF MOTOR VEHICLES AND OUTBOARD MOTORS*"] and Sections 304.010 to 304.040 and Sections 304.120 to 304.570, Chapter 304, supra ["Traffic Regulations"], it appears that the legislature cognizably intended to subject a virtually limitless classification of vehicles ("excepting" only "devices moved by human power or used exclusively upon stationary rails or tracks") to the requirements of Sections 307.040 and 307.115, supra, as opposed to a less inclusive classification of vehicles subject to the "registration" and "licensing" requirements of Chapter 301, supra, and to the "traffic regulations" set forth in Sections 304.010 to 304.040 and 304.120 to 304.570, supra. This well-carved distinction strongly suggests (in any event prior to 1974—see footnote 1, supra) that the legislature legitimately recognized that a vast array of vehicles, not just those "designed primarily for use on highways", traverse streets and highways at nighttime, and voiced a proper legislative concern for the potential danger to which occupants of such vehicles were exposed

absent the display of any lights, and, as well, the potential danger to which other vehicular traffic was exposed. This conclusion is buttressed by the fact that certain other sections contained in Chapter 307, RSMo 1969, ["Light Regulations"] expressly speak in terms of "motor vehicles" rather than "vehicles". See for example Sections 307.045, 307.050, 307.060, 307.065, 307.070, 307.075, 307.080, 307.085, 307.100 and 307.105, RSMo 1969. In light of the variant use of terms, the distinction between definitions by the legislature can only be viewed as deliberate.

This court refuses to forage among various peripheral rules of construction to determine the meaning of "vehicle" as defined in paragraph (8) of Section 307.020, supra, because the language employed therein is unambiguous, conveys a plain and definite meaning, and the inherent legislative intent is readily ascertainable. *State ex rel. Dravo Corp. v. Spradling,* 515 S.W.2d 512 (Mo.1974) *rev'd on other grounds*; *State ex rel. LeNeve v. Moore,* 408 S.W.2d 47 (Mo. banc 1966); and *DePoortere v. Commercial Credit Corporation,* 500 S.W.2d 724 (Mo.App.1973). Accordingly, under the then prevailing law, the motorized wheelchair occupied by respondent was a "vehicle", to wit, a "device in . . . which . . . [she was being] . . . transported upon a highway" which was not "moved by human power or used exclusively upon stationary rails or tracks" [paragraph (8) of Section 307.020, supra] and it was being operated in violation of Sections 307.040 and 307.115, supra. It is well settled that violation of a statute is ordinarily negligence per se. *Berry v. Kansas City Public Service Co.,* 341 Mo. 658, 108 S.W.2d 98 (1937) *rev'd on other grounds*; and *Beezley v. Spiva,* 313 S.W.2d 691 (Mo.1958) *rev'd on other grounds.* There is no escape from the conclusion, supra, that respondent, as contended by appellant, was subject to and violated Sections 307.040 and 307.115, supra, and at first blush such would appear to bar recovery by respondent.

The conclusion just reached, however, does not consummate this appeal.

The fact that appellant has prevailed in her contention that the motorized wheelchair was a vehicle as defined in paragraph (8) of Section 307.020, supra, and respondent was statutorily remiss for failing to exhibit lights thereon as required by Sections 307.040 and 307.115, supra, must, however hapless from appellant's standpoint, be characterized as "winning the battle" and "losing the war". Appellant perfunctorily assumes that if respondent was subject to and violated Sections 307.040 and 307.115, supra, then she is barred from recovery. Such is a fatal assumption on her part. Contributory negligence, in order to bar recovery by an injured or damaged party, must be a proximate cause of the resultant injuries or damages sustained. *Stumpf v. Panhandle Eastern Pipeline Co.,* 354 Mo. 208, 189 S.W.2d 223 (1945) *rev'd on other grounds*; and *McConnell v. Pic-Walsh Freight Company,* 432 S.W.2d 292 (Mo.1968). This is true even though contributory negligence is predicated on violation of a statute. *Beezley v. Spiva,* supra, l. c. 697. In unadorned language, the test for determining proximate cause is whether "the facts show that the injury [or damages] would not have occurred in the absence of the negligent act." *Dixon v. Wabash R. Co.,* 198 S.W.2d 395, 398 (Mo.App.1946); and *Dintelman v. McHalffey,* 435 S.W.2d 633 (Mo.1968). In the instant case this court cannot unequivocally say as a matter of law that the resultant damages sustained by respondent's motorized wheelchair would not have occurred if it had been lighted in compliance with Sections 307.040 and 307.115, supra. The arbiter of the facts below, i. e., the trial court, reasonably could and apparently did conclude that even if respondent's motorized wheelchair had been properly lighted appellant still would not have seen it in time to have avoided colliding with it because of the admittedly "fogged" or "frosted" condition of the windshield of the Volkswagen she was driving. In a sense of "caution" this court cannot say with a "firm belief" that the trial court's conclusion was against the weight of the evidence. Nor can it be said that the trial court "errone-

ously declared" or "erroneously applied" the law. *Murphy v. Carron, supra.*

Having concluded that respondent's motorized wheelchair was a "vehicle" as defined in paragraph (8) of Section 307.020, supra, and that she was subject to Sections 307.040 and 307.115, supra, appellant's alternative contentions have been rendered moot. Moreover, if any of appellant's alternative contentions could arguably be said to retain any shred of viability, the facts in which they are necessarily immersed relegate them to questions of fact, both as to contributory negligence and proximate cause, and this court, in view of the scope of appellate review spelled out in *Murphy v. Carron,* supra, would feel constrained to abide by rather than reject the ultimate conclusions reached by the trial court with respect thereto as implicitly disclosed by the judgment rendered by the trial court.

Judgment affirmed.

All concur.